IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CR-00040-F-1
No. 5:13-CV-00719-F

| | |
|---|---|
| CHRISTOPHER STEPHONE COBB,<br>Petitioner, | )<br>)<br>) |
| v. | ) **ORDER** |
| UNITED STATES OF AMERICA,<br>Respondent. | )<br>)<br>)<br>) |

Before the court are the following motions:

(1) Christopher Stephone Cobb's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-86];
(2) the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment [DE-90], which has been construed as a Motion for Summary Judgment;
(3) Cobb's Motions to Amend [DE-93, -103, -109];
(4) Cobb's Motion to Appoint Counsel [DE-104]; and
(5) Cobb's Motion for DNA Testing [DE-105].

The issues have been fully briefed, and the matters are now ripe for ruling. For the reasons addressed below, Cobb's Motion to Vacate is DENIED, the Government's Motion for Summary Judgment is ALLOWED, Cobb's first Motion to Amend is ALLOWED, Cobb's second Motion to Amend is DENIED in part and DISMISSED in part, Cobb's third Motion to Amend is DENIED, Cobb's Motion to Appoint Counsel is DENIED, and Cobb's Motion for DNA Testing is DENIED.

### I. Factual and Procedural Background

On February 4, 2010, Cobb was charged in a three-count indictment. *See* Indictment [DE-1]. Then, on August 18, 2010, Cobb was charged in a six-count superseding indictment. *See* Superseding Indictment [DE-33]. In Counts One and Six, Cobb was charged with possession

of a firearm and/or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *See id.* Counts Two and Four charged Cobb with possession with intent to distribute a quantity of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). *See id.* In Count Three, Cobb was charged with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). *See id.* Count Five charged Cobb with possession of a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1). *See id.*

At his arraignment, held on November 8, 2010, Cobb pled not guilty to each count of the Superseding Indictment. Following a two-day jury trial, Cobb was found not guilty of Count Five but guilty as to the remaining counts. *See* Verdict [DE-60].

Cobb's sentencing was held on March 2, 2011, and he was sentenced to a total of 500 months' imprisonment. *See* Judgment [DE-64]. Cobb was sentenced to 120 months' imprisonment as to each of Counts One and Six, to run concurrently. *See id.* Cobb was sentenced to 180 months' imprisonment as to each of Counts Two and Four, to run concurrently with each other but consecutive to Counts One and Six. *See id.* Cobb was sentenced to 200 months' imprisonment in Count Three, to run consecutive to all other counts. *See id.*

On March 8, 2011, Cobb filed a Notice of Appeal [DE-67].[1] In an unpublished per curiam opinion, the Fourth Circuit Court of Appeals affirmed this court's judgment. *See* Unpublished Opinion [DE-80]. Cobb sought rehearing en banc, but the request was denied. Cobb then filed a petition for writ of certiorari. On October 9, 2012, the Supreme Court denied Cobb's petition.

---

[1] The sole issue Cobb raised on appeal was whether this court violated his rights under the Confrontation Clause of the Sixth Amendment by allowing the Government's motion *in limine* and preventing him from cross-examining one of the arresting officers about a specific, unrelated incident in an attempt to show the officer's alleged racial bias. *See* Unpublished Opinion [DE-80].

2

Cobb filed the instant *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-86] on October 11, 2013. In his § 2255 motion, Cobb raises the following issues: (1) his attorney provided ineffective assistance by failing to investigate the facts surrounding his arrest, including the seizure of the black leather jacket, which should have led to the filing of a motion to suppress; (2) his attorney provided ineffective assistance by sharing privileged information with the Assistant United States Attorney ("AUSA"); (3) he is actually innocent based on the lack of a nexus between him and the black leather jacket; and (4) this court's sentence violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013). On November 25, 2013, the Government filed its Motion for Summary Judgment [DE-90].

## II. Legal Standards

### A. 28 U.S.C. § 2255

Cobb filed the instant motion pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). With a § 2255 motion, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). When deciding a § 2255 motion, the court need not hold a hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). When conducting the § 2255(b) review, *pro se* filings are held to a less stringent standard. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.

3

1978).

**B. Summary Judgment**

Summary judgment is appropriate where there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991) (applying the summary judgment standard to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the record taken as a whole could not lead a trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### III. Discussion

**A. Motion to Vacate**

**1. The Government is entitled to summary judgment on Cobb's first and second claims.**

Cobb has raised two claims of ineffective assistance of counsel. *See* Mot. Vacate [DE-86]. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The petitioner bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. There is "a strong presumption that counsel's conduct falls within

4

the wide range of reasonable professional assistance." *Id.* at 689. As for the second prong, the petitioner must demonstrate that his counsel's inadequate performance was prejudicial to him. *Id.* at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* The court will apply the *Strickland* standard to both of Cobb's ineffective assistance of counsel claims.

### a. Cobb alleges that his attorney failed to investigate the facts surrounding his arrest and the seizure of the black leather jacket, which should have resulted in the filing of a motion to suppress.

In his first claim, Cobb alleges that his attorney provided ineffective assistance by failing to investigate the facts surrounding his arrest and the seizure of the black leather jacket, which should have led to the filing of a motion to suppress. Mot. Vacate [DE-86] at 4; Mot. Vacate Mem. [DE-86-1] at 11-22. Next, Cobb argues that his attorney should have requested DNA analysis to determine if he had actually worn the black leather jacket. Mot. Vacate Mem. [DE-86-1] at 19. Cobb next argues that his attorney should have gotten Jerome McCoy to testify as a defense witness. *Id.* at 20-21. Cobb contends that if his attorney had investigated his allegations against the arresting officers, there is a reasonable probability that this court would have suppressed the evidence found in the black leather jacket. *Id.* at 17-18. Cobb concludes that if his attorney had requested a suppression hearing, there is a reasonable probability that this case would have been dismissed. *Id.* at 16.

Based on the trial testimony from Officers Ford and Taylor, Cobb was wearing a black leather jacket prior to his arrest. *See* Nov. 15, 2010 Tr. [DE-77] at 40:14-15, 66:17. Following

5

apprehension, the officers noticed that Cobb was no longer wearing the jacket. *Id.* at 46:19-21, 82:7-12. Officer Ford located the black leather jacket near where he had tackled Cobb. *Id.* at 46:22-23. Officer Taylor found a loaded firearm and crack cocaine in the jacket. *Id.* at 71:9-73:13. Given this evidence from Officers Ford and Taylor, the two officers involved in Cobb's arrest, the court concludes that Cobb has failed to raise a genuine issue of material fact on the issue of whether his attorney provided deficient performance by failing to file a motion to suppress. Moreover, even if Cobb's attorney had filed a motion to suppress, the evidence linking Cobb to the black leather jacket and its contents was so strong that Cobb has failed to raise a genuine issue of material fact on the issue of prejudice. Cobb's claim that his attorney provided ineffective assistance by failing to request DNA analysis of the black leather jacket and its contents must also fail based on the strength of the testimony from Officers Ford and Taylor, which tied Cobb directly to the black leather jacket.

The Government is also entitled to summary judgment on Cobb's claim that his attorney should have gotten McCoy to testify as a defense witness. Officer Brinkley, an officer with the Raleigh Police Department, testified at Cobb's trial regarding covert surveillance conducted on January 14, 2010. *See* Nov. 15, 2010 Tr. [DE-77] at 85:6-7; 85:21-22; 88:25. While conducting surveillance, Officer Brinkley saw McCoy purchase drugs from Cobb. *Id.* at 92:14-95:19. Cobb's attorney may have decided not to call McCoy as a defense witness based on the fact that the evidence showed he purchased drugs from Cobb. *Strickland's* presumption of reasonableness is particularly difficult to overcome in a claim of ineffectiveness for failing to call a witness, "given that the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which we

6

must afford enormous . . . deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quotation marks and alteration omitted). In sum, Cobb has failed to raise a genuine issue of material fact regarding his attorney's decision not to call McCoy as a defense witness. Cobb has also failed to raise a genuine issue of material fact on the issue of prejudice, in light of the Government's case against him. In particular, as noted, there was a loaded gun and crack cocaine in the jacket Cobb was seen wearing. *Id.* at 71:9-73:13. Additionally, Officer Brinkley observed Cobb conduct a drug transaction with McCoy. *Id.* at 92:14-95:19.

In light of the foregoing, Cobb has failed to raise a genuine issue of material fact under either prong of the *Strickland* standard. Consequently, the Government is entitled to summary judgment on Cobb's first claim.

### b. Cobb alleges that his attorney shared privileged information with the AUSA.

Cobb alleges in his second claim that his attorney provided ineffective assistance by sharing privileged information with the AUSA. Mot. Vacate [DE-86] at 5; Mot. Vacate Mem. [DE-86-1] at 22-24. In particular, Cobb alleges that his attorney disclosed that he was having an affair with Tabatha Strickland. Mot. Vacate Mem. [DE-86-1] at 22. Cobb concludes that prejudice is "presumed," and he is entitled to a new trial with counsel that is not conflicted or, in the alternative, dismissal of the entire case. *Id.* at 23-24.

Cobb offers no support for his speculative claim that his attorney must have told the AUSA about his affair with Strickland because this information was not contained in the discovery. *Id.* at 22. This claim, based on mere speculation, fails to create a genuine issue of material fact on Cobb's attorney's performance. *See Caderno v. United States*, 256 F.3d 1213,

7

1218-19 (11th Cir. 2001) (affirming the district court's denial of § 2255 motion based, in part, on the petitioner's speculative claim that his counsel had an actual financial conflict of interest because the petitioner was unable to pay counsel the full retainer fee). Moreover, Cobb has failed to raise a genuine issue of material fact on the issue of prejudice because he fails to suggest how his attorney's alleged disclosure impacted the outcome of his case.

In light of the foregoing, Cobb has failed to raise a genuine issue of material fact under either prong of the *Strickland* standard. Accordingly, the Government is entitled to summary judgment on Cobb's second claim.

### 2. The Government is entitled to summary judgment on Cobb's third claim.

In his third claim, Cobb alleges that he is actually innocent due to the lack of a nexus between him and the black leather jacket where the contraband was found. Mot. Vacate [DE-86] at 7; Mot. Vacate Mem. [DE-86-1] at 24-25. Cobb concedes that he did not previously raise this claim, but he argues that blame is attributable to his attorney's ineffective assistance of counsel. Mot. Vacate [DE-86] at 10.

The evidence offered during Cobb's trial provides a sufficient basis to connect him to the black leather jacket and its contents. Officer Ford, with the Raleigh Police Department, testified at Cobb's trial that he saw an individual that he recognized as Cobb while he was on patrol on October 29, 2009. *See* Nov. 15, 2010 Tr. [DE-77] at 31:17; 32:20-21; 33:4, 40:23. At the time, Cobb was wearing a black leather jacket. *Id.* at 40:14. Officer Ford ran Cobb's name through his databases to see if Cobb had any outstanding warrants. *Id.* at 41:15-17; 42:1-3. The result of the search revealed five outstanding warrants. *Id.* at 42:5-6. Officer Ford called for assistance. *Id.* at 42:7-13. When assistance arrived, Officer Ford and the two other officers went into a

8

triangle formation around Cobb to deter him from running. *Id.* at 45:10-19. Cobb started to run directly at Officer Ford, and Officer Ford tackled him to the ground. *Id.* at 45:19-21; 46:1-5. Officer Ford noticed when they got Cobb into handcuffs that he was no longer wearing the black leather jacket. *Id.* at 46:19-21. The jacket was on the ground close to where Cobb and Officer Ford had landed. *Id.* at 46:23. A gun and a substantial amount of what appeared to be crack cocaine were found in the jacket. *Id.* at 47:18-20; 47:24-25.

Officer Taylor testified that he went with Officer Ladd to assist Officer Ford with apprehending Cobb. *Id.* at 61:23-24; 63:3-8. Officer Taylor was able to identify Cobb, based on the description provided by Officer Ford, and also from a photograph. *Id.* at 66:10-15. At the time, Cobb was wearing a black leather jacket. *Id.* at 66:16-17. While the officers were trying to apprehend Cobb, he twisted out of his jacket. *Id.* at 68:10-13. The jacket fell to the ground. *Id.* at 68:15-16. Officer Taylor was standing almost directly over the jacket. *Id.* at 68:22. As soon as Office Taylor realized Cobb was in handcuffs, he bent down to pick up the jacket. *Id.* at 69:6-7. Cobb immediately started claiming that the jacket was not his. *Id.* at 69:15-18. Officer Taylor recovered a loaded handgun from the jacket. *Id.* at 69:21-24; 71:19-24. Officer Taylor also discovered a rather large piece of crack cocaine in the jacket. *Id.* at 73:9-13.

In light of this testimony from law enforcement, there was a sufficient link between Cobb and the black leather jacket that contained the loaded handgun and crack cocaine. Cobb has failed to raise a genuine issue of material fact. Consequently, the Government is entitled to summary judgment on Cobb's third claim.

**3. The Government is entitled to summary judgment on Cobb's fourth claim because *Alleyne* is not retroactively applicable on collateral review.**

9

Cobb argues in his fourth claim that his sentence violated *Alleyne*. Mot. Vacate [DE-86] at 8; Mot. Vacate Mem. [DE-86-1] at 33-34. Specifically, Cobb contends that his sentence was enhanced beyond the statutory mandatory minimum by this court, yet the issue was not submitted to a jury. Mot. Vacate Mem. [DE-86-1] at 34.

In *Alleyne*, the Supreme Court held that any fact, other than a prior conviction, that increases the statutory minimum punishment is an element of the offense that must be submitted to the jury and found beyond a reasonable doubt. 133 S. Ct. at 2162-63. In reaching its conclusion, the Supreme Court expressly overruled its prior decision in *Harris v. United States*, 536 U.S. 545 (2002).

The Supreme Court has not held that *Alleyne* established a new right that is retroactively applicable to cases on collateral review. *See United States v. Stewart*, 540 F. App'x 171, 172 n.1 (4th Cir. 2013) ("We note that *Alleyne* has not been made retroactively applicable to cases on collateral review."); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (noting that *Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466 . . . (2000). The Justices have decided other rules based on *Apprendi* do not apply retroactively on collateral review. . . . This implies that the Court will not declare *Alleyne* to be retroactive).

Cobb cannot retroactively apply the new procedural rule set forth in *Alleyne* because it does not fit into one of the exceptions set forth under *Teague v. Lane,* 489 U.S. 288 (1989). Pursuant to *Teague*, "[n]ew rules of constitutional criminal procedure are generally not applied retroactively on collateral review." *Burch v. Corcoran,* 273 F.3d 577, 584 (4th Cir. 2001) (internal quotation marks omitted and alteration in original). When assessing whether a rule is "new" for purposes of *Teague*, a court must look at the legal landscape at the time of the

10

petitioner's conviction and sentence in order to determine whether the result of the new rule was dictated by existing precedent at the time the petitioner's conviction became final. *O'Dell v. Netherland*, 95 F.3d 1214, 1221 (4th Cir. 1996).

In this case, Cobb's conviction became final on October 9, 2012, the date the Supreme Court denied his petition for writ of certiorari. This is prior to the Supreme Court's decision in *Alleyne*.[2] Moreover, *Alleyne* expressly overruled the prior applicable precedent in *Harris*. *Alleyne*, 133 S. Ct. at 2155. Thus, *Alleyne* announces a new rule for purposes of *Teague*.

"[I]f the rule is new, then it does not apply retroactively unless it falls within one of the two narrow exceptions to the *Teague* bar." *United States v. Sanders,* 247 F.3d 139, 146-47 (4th Cir. 2001). The first exception to the *Teague* bar applies if the new rule "places a class of private conduct beyond the power of the State to proscribe or addresses a substantive categorical guarante[e] accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Saffle v. Parks,* 494 U.S. 484, 494 (1990) (internal citation and quotation marks omitted). Although new rules of this type are sometimes referred to "as falling under an exception to *Teague's* bar on retroactive application on procedural rules, they are more accurately characterized as substantive rules not subject to the bar." *Schriro v. Summerlin*, 542 U.S. 348, 352 n.4 (2004) (internal citation omitted).

The first exception to the *Teague* bar does not apply to Cobb's case because *Alleyne* did not place enhanced § 924(c) offenses, brandishing or discharging a firearm during a federal drug or violent crime, beyond the scope of the Government's authority to proscribe. *See Sanders*, 247 F.3d at 148 (citing *Jones v. Smith*, 231 F.3d 1227, 1237 (9th Cir. 2000) (holding that the first

---

[2] The Supreme Court issued its decision in *Alleyne* on June 17, 2013.

11

*Teague* exception did not apply to *Apprendi v. New Jersey,* 530 U.S. 466 (2000), because it did not proscribe the state's authority to punish attempted murder)). The rule in *Alleyne* is procedural because it prescribed the method by which the act of brandishing or discharging is to be constitutionally found, not a substantive rule that narrows the definition of brandishing or discharging.

The second exception to the *Teague* bar is for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *O'Dell,* 521 U.S. at 157. The "class of rules" that satisfies the second *Teague* exception is "extremely narrow." *Schriro,* 542 U.S. at 352; *see also Billings v. Polk,* 441 F.3d 238, 243 n.1 (4th Cir. 2006); *Sanders,* 247 F.3d at 147. When assessing whether a new rule is a "watershed" rule for purposes of *Teague,* the test is whether the prior rule "so seriously diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Schriro,* 542 U.S. at 355-56 (quotation marks omitted and alteration in original). "The Supreme Court has stated that it is unlikely that many such rules remain undiscovered." *Sanders,* 247 F.3d at 148 (holding that the Supreme Court's ruling in *Apprendi* did not apply retroactively on collateral review and did not satisfy either of the exceptions to *Teague*). In light of the fact that "such procedures would be so central to an accurate determination of innocence or guilt, ... it [is] unlikely that many such components of basic due process have yet to emerge." *Graham v. Collins,* 506 U.S. 461, 478 (1993) (quoting *Teague,* 489 U.S. at 313). Since *Teague,* the Supreme Court has not found a single rule that qualifies under the second exception. *Sanders,* 247 F.3d at 148.

*Alleyne* is not a "watershed" rule that triggers the second *Teague* exception. *See United States v. Mathur,* 685 F.3d 396, 399 (4th Cir. 2012) ("Since *Teague,* the Supreme Court has

12

reviewed numerous claims that new rights fall within this exception, and it has rejected every single one of them."). In *Sanders*, the Fourth Circuit Court of Appeals rejected retroactive application of *Apprendi*. *Sanders*, 247 F.3d at 151. In light of the fact that *Alleyne* applies *Apprendi* to overrule *Harris*, *Alleyne* does not apply retroactively to Cobb's conviction. *See Alleyne*, 133 S. Ct. at 2163.

Even if *Alleyne* could apply retroactively to Cobb's conviction, he is not entitled to relief because he complains about the calculation of his sentencing guideline range. *See* Mot. Vacate Mem. [DE-86-1] at 33-34. In *Alleyne*, the Supreme Court specifically held that its ruling did not mean that "any fact that influences judicial discretion must be found by a jury." 133 S. Ct. at 2163. The Court further explained that "[w]e have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.*

For these reasons, Cobb has failed to a raise a genuine issue of material fact. Accordingly, the Government is entitled to summary judgment on Cobb's fourth claim.

## B. Cobb's Motions to Amend

The amendment of a § 2255 motion is governed by Rule 15 of the Federal Rules of Civil Procedure. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (noting that although the Rules Governing Section 2255 do not address the procedure for amending motions, courts have typically applied Federal Rule of Civil Procedure 15). The Fourth Circuit Court of Appeals has held that "the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). In either case, the court should grant leave freely and deny it only where good cause exists, such as prejudice to the opposing party. *Id.* Leave should also be denied when the

13

amendment would be futile. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

### 1. First Motion to Amend

In his first Motion to Amend [DE-93], Cobb requests that the following sentence be removed and/or excised from paragraph 45 of page 24 in his § 2255 motion:

> Cobb asserts that no officer has testified and/or can testify to the fact they saw Cobb wearing the black leather jacket at any time before it was hanging on the bus stop trash can on January 14, 2010, and/or before Cobb's arrest.

*Id.* at 1. According to Cobb, this sentence is simply not true. *Id.*

Cobb is essentially requesting that the above-stated sentence be removed from his § 2255 motion because it is not an accurate statement. The Government does not oppose this motion. *See* Am. Resp. [DE-115] at 1. Because Cobb has shown good cause and the motion is unopposed, Cobb's first Motion to Amend [DE-93] will be allowed.

### 2. Second Motion to Amend

In his second Motion to Amend [DE-103], Cobb seeks to amend his § 2255 motion to add two claims of ineffective assistance of counsel: (1) his attorney failed to correct this court's error in calculating his advisory guideline imprisonment range; and (2) his attorney failed to have the black leather jacket and its contents tested for DNA. *Id.* at 1-2.

At the outset, the court notes that the second claim was raised in Cobb's § 2255 motion. *See* Mot. Vacate Mem. [DE-86-1] at 19. This issue was previously addressed. *See supra* Section III.A.1.a. It would be futile to raise the issue again. Consequently, this portion of Cobb's second Motion to Amend [DE-103] will be denied.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2255 claims are subject to a one-year statute of limitations, which runs from the latest of the

14

following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Generally, a judgment of conviction becomes final when the time for filing a direct appeal expires. *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000). Two exceptions to this rule arise when a federal prisoner files a direct appeal. First, when a federal prisoner files a petition for writ of certiorari with the United States Supreme Court, a judgment of conviction becomes final when the Supreme Court denies the petition or issues a decision on the merits. *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001). Second, when a federal prisoner does not file a timely certiorari petition after disposition of his direct appeal, conviction becomes final on the date the prisoner's time for filing such a petition expires. *See Clay v. United States*, 537 U.S. 522, 532 (2003).

In this case, on October 9, 2012, the Supreme Court denied Cobb's petition for certiorari, and judgment became final on that date. Cobb had until October 9, 2013 to timely file his § 2255 claims. Cobb's second Motion to Amend was not file until June 9, 2014. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (A prisoner's pleading is deemed filed at the moment of delivery to

15

prisoner authorities for forwarding to the court). Thus, his second Motion to Amend is untimely. Moreover, Cobb's second Motion to Amend does not relate back to his timely-filed § 2255 motion. *See Pittman*, 209 F.3d at 318 ("These new claims do not relate back to his original claims because they arise from separate occurrences of 'both time and type.'"); *see also United States v Duffus*, 174 F.3d 333, 337-38 (3d Cir. 1999) ("We reiterate that if the court permitted the amendment it would have acted contrary to the policy of the AEDPA, which requires courts to measure the running of the limitations periods from the date on which the judgment of conviction becomes final."). Consequently, this potion of Cobb's second Motion to Amend [DE-103] is dismissed as untimely.

### 3. Third Motion to Amend

In his third Motion to Amend [DE-109], Cobb seeks to add a claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015). In particular, Cobb argues that *Johnson* invalidates his Count Three conviction under 18 U.S.C. § 924(c). *Id.* at 1.

In *Johnson*, the Supreme Court addressed whether increasing a defendant's sentence based on the residual clause, contained in 18 U.S.C. § 924(e)(2)(B)(ii), violates due process. 135 S. Ct. at 2551. The residual clause provided that an offense was a violent felony for purposes of § 924(e), if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court held that "[i]ncreasing a defendant's sentence under the [residual] clause denies due process of law." *Johnson*, 135 S. Ct. at 2557. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson* applies retroactively to cases on collateral review. 136 S. Ct. at 1268.

Even if *Johnson* applies to the residual clause contained in 18 U.S.C. § 924(c)(3)(B),

16

*Johnson* has no impact on Cobb's Count Three conviction because he was convicted of violating § 924(c) for committing a *drug trafficking* offense, not a crime of violence. For this reason, § 924(c)(3)(B)'s definition of "crime of violence" does not apply here. *See United States v. Richardson*, No. 15-7871, 2016 WL 3524692, at *1 n.* (4th Cir. June 28, 2016) (finding that *Johnson* was inapplicable where the conviction underlying the § 924(c) conviction was a drug offense and not a crime of violence); *Moses v. United States*, Nos. 1:06cr46, 1:16cv728, 2016 WL 5845919, at *3 (E.D. Va. Oct. 6, 2016) (same). Because amendment would be futile, Cobb's third Motion to Amend [DE-109] will be denied.

## C. Cobb's Motion to Appoint Counsel

Cobb's next motion before the court is his Motion to Appoint Counsel [DE-104]. Cobb seeks the appointment of counsel to assist him with proving his "factual and actual innocence." *Id.* at 1.

There is no constitutional right to counsel in section 2255 proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions[.]"); *United States v. Williamson*, 706 F .3d 405, 416 (4th Cir. 2013).

In this case, the court concludes that the interests of justice do not require appointment of counsel to assist Cobb. Accordingly, Cobb's Motion to Appoint Counsel [DE-104] will be DENIED.

## D. Cobb's Motion for DNA Testing

Cobb's final motion before this court is his Motion for DNA Testing [DE-105], filed pursuant to the Innocence Protection Act of 2004 ("IPA"), codified at 18 U.S.C. §§ 3600-3600A.

17

Cobb contends that his defense at trial was that the black jacket, and the drugs and gun found in the jacket, did not belong to him. DNA Mot. Mem. [DE-105-1] at 2.

The IPA came into effect on October 30, 2004, and it "allows federal prisoners to move for court-ordered DNA testing under certain specified conditions." *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 63 (2009); *United States v. Cowley*, 814 F.3d 691, 695 (4th Cir. 2016). A movant under the IPA must satisfy ten specific requirements before a district court can order DNA testing. 18 U.S.C. § 3600(a)(1)-(10); *Cowley*, 814 F.3d at 697 (citing *United States v. Pitera*, 675 F.3d 122, 127-28 (2d Cir. 2012)). One such requirement requires that the motion be "made in a timely fashion, subject to" some rebuttable presumptions. 18 U.S.C. § 3600(a)(10). The IPA has a rebuttable presumption against timeliness for DNA testing motions made more than 36 months after conviction *Id.* § 3600(a)(10)(A).

In this case, the jury returned its verdict on November 16, 2010, and this court entered judgment on March 7, 2011. Cobb filed the instant Motion for DNA Testing, at the earliest, on June 9, 2014. Because Cobb's motion was filed more than 36 months after conviction, the motion is presumed untimely. Moreover, Cobb has failed to show a basis upon which this untimeliness can be overcome. *See id.* § 3600(a)(10)(B). For these reasons, Cobb's Motion for DNA Testing [DE-105] is denied.

### IV. Conclusion

For the foregoing reasons, it is ORDERED as follows:

(1) Cobb's Motion to Vacate [DE-86] is DENIED;

(2) the Government's Motion for Summary Judgment [DE-90] is ALLOWED;

(3) Cobb's first Motion to Amend [DE-93] is ALLOWED;

18

(4) Cobb's second Motion to Amend [DE-103] is DENIED in part and DISMISSED in part;

(5) Cobb's third Motion to Amend [DE-109] is DENIED;

(4) Cobb's Motion to Appoint Counsel [DE-104] is DENIED; and

(5) Cobb's Motion for DNA Testing [DE-105] is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) (A certificate of appealability will not issue unless there has been "a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (Where a court has rejected the constitutional claims on their merits, a petitioner must demonstrate that reasonable jurists would find that the court's assessment of the constitutional claims is debatable or wrong, but when a court denies relief on procedural grounds, a petitioner must demonstrate that jurists of reason would find it debatable whether the court's procedural ruling was correct.).

SO ORDERED.

This the _10_ day of February, 2017.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

19

Case 5:10-cr-00040-BO Document 116 Filed 02/13/17 Page 19 of 19